UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18 CR 696 |
| | ) | |
| vs. | ) | Honorable Robert Blakey |
| | ) | |
| ASHRAF AL-SAFOO | ) | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
REQUEST FOR PRE-TRIAL RELEASE**

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully responds to Defendant's Motion for Revocation of Detention Order, Request For a Detention Hearing, and Request for Pre-Trial Release on Conditions. Dkt. No. 109. Because no set of conditions can reasonably assure the safety of the community or the defendant's appearance at future proceedings, the government respectfully requests that the Court order the defendant detained pending trial.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 2018, the Honorable M. David Weisman signed a complaint charging Ashraf AL-SAFOO with conspiracy to provide material support to ISIS, in violation of 18 U.S.C. § 2339B. Dkt. No. 1. AL-SAFOO was arrested the following day. At the time of his arrest, AL-SAFOO was using his white iPhone, which was seized and searched pursuant to a warrant. Several other of AL-SAFOO's electronic devices, including a desktop computer, were also searched pursuant to a warrant.

A detention hearing was held on October 31, 2018. Dkt. No. 19. After hearing from the government and defense, Magistrate Judge Weisman ordered AL-SAFOO

detained pending trial, finding that the defendant was a danger to the community. Dkt. No. 19. The court "ma[de] no finding as to whether risk of flight would also be an appropriate basis to detain the Defendant." Dkt. No. 19. On November 15, 2018, a grand jury sitting in the Northern District of Illinois returned an indictment charging the defendant with conspiracy to provide material support, in the form of personnel and services, to ISIS. Dkt. No. 25. In sum, the Indictment alleges that AL-SAFOO was a leader in the Khattab Media Foundation ("Khattab"), an internet-based organization dedicated to the creation and widespread dissemination of ISIS propaganda, including edited video content, articles and essays, and infographics created through the use of video and photo editing and other similar software. AL-SAFOO and other members of Khattab also worked together to gain unauthorized access to social media accounts in order to spread their pro-ISIS message.

On September 9, 2019, the defendant filed a motion for release. Dkt. No. 109. A hearing on this motion is scheduled for September 26, 2019. Dkt. No. 111.

## II. LEGAL STANDARD

### A. Review of Detention Order

Where, as here, a magistrate judge ordered a defendant detained pending trial, a district court may review a magistrate judge's detention order pursuant to 18 U.S.C. § 3145(b). The court's review of such an order is *de novo*, since it must make an independent determination of the proper pretrial detention or conditions for release. *United States v. Sarabia-Saldana*, No. 96 CR 291-5, 1997 WL 106272, at *2 (N.D. Ill. Feb. 7, 1997), *citing United States v. Torres*, 929 F.2d 291, 292 (7th Cir.1991); *United*

*States v. Portes*, 786 F.2d 758, 761 (7th Cir.1985); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir.1985). The Court may also reopen the hearing, if "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. 3142(f).

### B. The Bail Reform Act

Bail decisions are controlled by the Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141-3156. The Act provides that, in general, a court "shall order" a defendant's pretrial release unless the court determines that there is no "condition or combination of conditions . . . [that] will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

Detention is appropriate where the government proves by clear and convincing evidence that the defendant is a danger to others or to the community, or when the government proves by a preponderance of the evidence that the defendant is a risk of flight, and that in either case, there are no conditions or combination of conditions that will assure the safety of the community or the defendant's appearance at future court proceedings. *See* 18 U.S.C. §3142(f).

Whether detention is sought on the basis of flight or dangerousness, the Act lists four factors to be considered in the detention analysis:

(1) "the nature and circumstances of the offense charged";
(2) "the weight of the evidence against the person";

(3) "the history and characteristics of the person"; and

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

### C.    Presumption Cases

Because the Defendant has been charged under 18 U.S.C. § 2339B, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e)(3)(C) (18 U.S.C. § 2339B is a crime listed in 18 U.S.C. § 2332b(g)(5)).

Though rebuttable, this presumption places a burden on the defendant to produce some evidence to show that he will not constitute a danger to the public or a serious risk of flight. The burden of persuasion demonstrating the need for detention nevertheless remains with the government. *See United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). Even if the defendant presents evidence to challenge the presumption, it remains a factor to be considered by the court. *Portes*, 786 F.2d at 764; *United States v. Dominguez*, 783 F.3d 702, 707 (7th Cir. 1986) ("Use of ['rebuttable'] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).").

## III. ARGUMENT

Ashraf AL-SAFOO was a leader and administrator of Khattab, which created and disseminated materials containing threats of violence and that encouraged attacks on ISIS's enemies and attempted to recruit new ISIS members. *See e.g.*, Complaint, Dkt. No. 1, ¶¶ 69-91. In that role, defendant demonstrated his commitment to ISIS's violent ideology, working with his co-conspirators in Khattab to engage in "media jihad", consistent with ISIS's instructions. *Id.* ¶¶ 16-19 (discussing ISIS's call for media jihad). The government's evidence is replete with AL-SAFOO's statements expressing his commitment to ISIS and reveals his role as a leader of Khattab, which was a sophisticated organization that employed designers, production specialists, writers, translators, uploaders and others, to create, refine and disseminate information for ISIS. Consistent with his commitment to ISIS, the defendant maintained a separate iPhone (the "white iPhone") and email accounts to support ISIS. In addition to Khattab materials, and consistent with AL-SAFOO's support of ISIS, the white iPhone and emails accounts contain explosive-making instructions, images and videos depicting graphic acts of violence, and a significant amount of ISIS propaganda calling for attacks against Westerners and "infidels."

In addition to maintaining standalone accounts and a separate "support" phone, *see* GX 6 at 3,[1] AL-SAFOO concealed his identity and his work for ISIS by using his expertise as an IT professional, sophisticated software, and other

---

[1] Government Exhibits are labelled as "GX". A copy of these exhibits will be provided to the Court and defense counsel.

operational security techniques. In light of this information and because all of the § 3142(g) factors show that the defendant is both a danger to the community and a flight risk, the defendant should be detained pending trial.[2]

### A. The Charged Crime is Serious

The charged offense is indisputably serious. Indeed, in listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider, among other factors, whether the crime charged is a federal crime of terrorism. *See* 18 U.S.C. § 3142(g)(1). As the Seventh Circuit explained in *Dominguez*, the presumption in section 3142 represents a congressional finding that certain groups of offenders "are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *See Dominguez*, 783 F.2d at 707. A defendant so-charged must therefore produce some evidence of their individual circumstances or characteristics to show that "what might be true in general, is not true in their particular case." *Id.* (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985). The defendant has not produced any information sufficient to overcome this presumption, particularly in light of ISIS's violent nature, his role in Khattab and Khattab's efforts to incite violence and recruit new ISIS members. The defendant also faces up to 20 years' imprisonment and thus could be highly motivated to flee the jurisdiction.

---

[2] The government incorporates by reference the information contained in the Complaint, Dkt. No. 1, and the information proffered at the detention hearing before Magistrate Judge Weismann on October 31, 2018. Dkt. No. 19.

### B.     The Weight of the Evidence is Strong

The weight of the evidence is strong and consists, *inter alia*, of extensive conversations among Khattab members, including, but not limited to, AL-SAFOO, conversations between AL-SAFOO and an FBI online covert employee ("OCE"), and a significant volume of evidence recovered from his smart phones and computers, only some of which are described here. The evidence clearly demonstrates AL-SAFOO's leadership role in Khattab, Khattab's organization, structure and methods, Khattab's allegiance to ISIS and actions pursuant to ISIS's direction and control, and its efforts to incite violence and recruit others to ISIS's cause.

For example, a review of the Notes application[3] of AL-SAFOO's white iPhone – the device he was using at the time of his arrest – reveals AL-SAFOO's writings related to his work with Khattab. One entry criticized a Khattab member for not working hard enough on Khattab's behalf: "I asked him to disseminate [pro-ISIS information] and to establish a section [for his work for Khattab] and he refused to make a comparison between him and Individual 1 [the name of another Khattab leader]. The section is idle. You are absent. I will bring a book. If you can't, we will consider a brother that will revitalize the section and will bring new brothers." GX 9, Row 2.

Another Note summarizes releases by the "Caliphate media," including Amaq, ISIS's official news agency, which has been added to ISIS's FTO designation. GX 9,

---

[3] Notes is an application available on the iPhone and other Apple devices. According to Apple, Notes can be used to "capture a quick thought, create checklists, [and] sketch ideas."

7

Row 15; *see also*, https://www.justice.gov/eoir/federal-register-notices-2019 (last visited September 24, 2019). Yet another entry warned ISIS supporters to "[b]eware of abandoning Jihad while knowing that it is timely and the path of the truth." GX 9, Row 34.

The Notes application also contains a series of Twitter account usernames and passwords, VPN locations, and Twitter hashtags and links related to ISIS, consistent with Khattab's efforts to obtain unauthorized access to legitimate users' accounts in order to share pro-ISIS material. *E.g.,* GX 9, Rows 25, 26. AL-SAFOO also wrote instructions on how to use those Twitter accounts to aid ISIS. Specifically, he wrote "Copy the tweets of the previous attack and directly access the links of the below targeted accounts and access the last tweet of each account and post a re-tweet." *Id.*, Row 30. These writing are consistent with the Twitter raids and other efforts to gain unauthorized access to social media account discussed within the Khattab organization. *E.g.,* Complaint, Dkt. No. 1, ¶¶ 94-112.

On social media, AL-SAFOO advertised "job" openings within Khattab, posting that "Al-Khattab Foundation announces the chance to join the media cadres and sections (Designers, writers, commentators, translators, uploaders . . . etc.)." GX 20 at 003-000473. AL-SAFOO's announcement expressly stated Khattab's allegiance to ISIS and its commitment to following the direction of ISIS:

> This announcement is to confirm the foundation's continuous support to the Islamic State[.] And in response and following the command of our shaykhs and leaders of the State[.] And to anger the infidels and hypocrites, in confrontation of them, and so they know that the State has supporters that don't get tired or bored.

*Id.*

AL-SAFOO's white iPhone also contained an audio recording[4] in which AL-SAFOO described his history with Khattab. In the voice recording, AL-SAFOO is speaking to Individual 1, the aforementioned Khattab leader. GX Audio 1 and Audio 1T. In describing his history with Khattab, AL-SAFOO referred to himself by his Khattab username "Abu Al Abbas" and stated, "I love Khattab Foundation" and "I used to treat it as if this is my own Foundation, as if I owned it, and I defended it as if I owned this thing." GX Audio 1T at 3.

In addition, hundreds of pieces of Khattab and ISIS propaganda were recovered from AL-SAFOO's devices and email accounts. *E.g.,* GX 13 at 22-28, 30-31, and 33-37 (containing a sample of images recovered from the defendant's white iPhone). Those images are consistent in content and type with those described in the Complaint. For example, some of the images celebrate the September 11, 2011 attacks, another image contains a threat to the 2018 World Cup, and another image threatens, in English, that the Islamic State "will water the earth with your blood. Prepare your coffins and dig your graves." *Id.*

The images on the white iPhone phone are also consistent with AL-SAFOO's involvement with Khattab. For example, on September 11, 2018, Khattab members shared a Khattab infographic celebrating the 9/11 attacks. The image showed a photo of Osama Bin Laden and an airplane with the text, "We have, by Allah's grace, made

---

[4] Apple iPhones contain an application that records audio only, commonly known as a voice note. This is distinct from a voicemail message. FBI personnel confirmed that one of the voices on the recording is the defendant. The recording is in Arabic and a draft translation is contained in GX Audio1T.

you forget the horrors of Washington and New York raids, and today, we remind you of them and promise you a terrorism, which will make you forget the most precious thing that you have." GX 20 at 003-000291. The same infographic was found on AL-SAFOO's white iPhone. GX 13 at 36.

One of the Khattab videos recovered from AL-SAFOO's phone is titled "Brothers in Marawi" and illustrates the way that Khattab encouraged ISIS supporters to engage in violence. The video celebrates the ISIS fighters who sieged Marawi, a location in the southern Philippines in 2017.[5] GX Video 2. The video features individuals dressed in military garb holding weapons, engaging in battle, and holding the ISIS flags. The video ends with graphic images of injured and dead soldiers. In the background, an English-language song encourages martyrdom, stating that "green birds they will fly" and promising that "diamonds and pearls and palaces [are] awaiting the man of Tawheed."[6] Another Khattab video located in AL-SAFOO's email account features ISIS fighters training and fighting in Libya. It also features executions and beheadings. GX Video 1.

### C. The Defendant's History and Characteristics Confirm He is a Danger to the Community and a Flight Risk

The defendant's history and characteristics confirm that he is a danger to the community and a risk of flight. In addition to being a leader within Khattab, AL-

---

[5] *See, e.g.,* The Philippines' Marawi City Remains Wrecked Nearly 2 Years After ISIS War, https://www.npr.org/2019/06/12/731218264/the-philippines-marawi-city-remains-wrecked-nearly-2-years-after-isis-war (last visited September 24, 2019).

[6] Tawheed is a reference to monotheism and is a central tenet of ISIS's ideology. Green birds are a reference to martyrdom.

SAFOO has explicitly, and repeatedly, expressed his commitment to ISIS. Consistent with this commitment, in addition to numerous Khattab materials, a sampling of which is described above, the government has uncovered pro-ISIS videos and images calling for violence against Westerners as well as documents containing bomb-making instructions.

As described in the Complaint, Khattab, an organization in which AL-SAFOO held a leadership position and for which he had administrator rights in their social media groups, re-pledged bayat, or oath of allegiance, to ISIS leader Abu Bakr Al Baghdadi:

> To enrage the kuffar and to terrorize them, we renew our bi'a [or bayat] to the commander of the believers and the caliph of Muslims sheikh Abu Bakr Al-Baghdadi, may Allah preserve him, to listen and to obey in what is desirable and undesirable and in times of hardship and prosperity, and to endure being discriminated against and to not dispute the orders of those in charge, unless I witness a clear apostasy, for which Allah has shown me a clear proof, and Allah is my witness.

Complaint, Dkt. No. 1, ¶ 35. Significantly, the phrasing of the bayat as a renewal indicates that the organization had previously sworn allegiance to ISIS. The renewal was consistent with a global renewal of allegiance to ISIS by ISIS members and supporters worldwide.[7] AL-SAFOO collected a number of these similar renewals

---

[7] *See* "Islamic State militants renew loyalty pledge to 'caliph' Baghdadi," https://www.reuters.com/article/us-mideast-crisis-islamic-state/islamic-state-militants-renew-loyalty-pledge-to-caliph-baghdadi-idUSKCN1HB1TC (quoting language by ISIS supporters: "To infuriate and terrorise the infidels, we renew our pledge of loyalty to the commander of the faithful and the caliph of the Muslims, the mujahid sheikh Abu Bakr al-Baghdadi al-Hussaini al-Qurashi may god preserve him," militants said in a statement posted on their social media groups.") (last visited September 24, 2019.).

by like-minded organizations on his white iPhone which contained nearly identical wording to Khattab's bayat:

> To frustrate the kuffar and terrorize them we renew our bay'ah to Amirul-Mu'minim, the Khalifah of the Muslims, Shaykh Mujahid Abu Baky Al-Bagdhadi al-Husayni al-Quirayshi (may Allah preserve him) pledging to listen and obey, in times of delight and dislike, and in times of hardship and ease, and to do so selflessly, and to not dispute the matter of those in authority except if we see blatant kufr concerning which we have proof from Allah.

*See* GX 18 at 3.

AL-SAFOO elsewhere expressed his support of the Islamic state as an administrator for Khattab, posting a call to action in Khattab's social media group. He wrote, "the [Islamic] State mobilized us to migrate, but we did not migrate[.] [A]nd they are mobilizing us for media support[.] So, should we sit idle again?" GX 17 at 003-000036; *see also,* GX 20 at 003-000036 ("It's a shame for a Mujahidin supporter to sit idle; no Jihad and no support"). Elsewhere, he asked a Khattab member, "Did you listen to sheikh Abu Al-Hasan's [ISIS spokesman] speech when he said that the bi'as are still coming to us[?]" GX 8 at 4.

AL-SAFOO also criticized Khattab members who had been "absent" from Khattab's activities, and in response, another member echoed Khattab's promise to "hear and obey" ISIS. GX 20 at 003-000073. The defendant has also praised ISIS leader Al Baghdadi. In a conversation in Khattab's social media group, AL-SAFOO wrote that another person asked about, "Abu Bakr Al-Baghdadi." AL-SAFOO criticized the reference to Baghdadi because the person referred to him "Just plainly like that, without the title Shaykh, Caliph, or Emir." GX 19 at 1. AL-SAFOO then

wrote that he responded, "I told him "The dirt on the flip-flop of Abu Bakr [Al Baghdadi] is worth more [than] all the Shiites . . . ." *Id.*

AL-SAFOO asked followers to support the Caliphate "against its enemy," writing, "[s]upport does not mean posting what is produced officially as news and victories only. There is an important aspect, and that is The call to almighty God and the publishing of the Islamic State's doctrine, May God strengthen it, support it against its enemy, and enable it on this earth." GX 20 at 003-000088. Likewise, he encouraged jihad, writing that "God has called whoever sits out from Jihad a liar to God" and "So, anyone who called on you to abandon Jihad or sat out of the Jihad, you know that he is tempted, where God had moved his heart away from righteousness to the wrong." *Id.* at 003-000107-08.

In addition to the ISIS propaganda items, AL-SAFOO's devices and email accounts contained numerous images and videos depicting graphic acts of violence, including beheadings and other executions, sniper videos and images of mutilated corpses.[8] Many of the documents advocate violence by ISIS supporters, and at least one document included a list of "Tips" for ISIS fighters in the West. The pro-ISIS newsletter contains a section titled, "Tips for the Mujahidin *in the land of the enemy*." GX 16 at 12, GX 14-16T at 6 (emphasis added). Among the suggestions for the mujahedeen were to "[c]hoose targets that could cause the greatest losses to the enemy with the lowest costs." *Id.* It further advise that "[d]uring implementation" of

---

[8] Due to the graphic nature of these items, they are not attached to the Government Exhibits. However, examples of these images and videos can be provided to the Court upon request.

the attacks, fighters should "retreat from the location safely and in the event that you are unable to do so, continue to fight till you are killed." *Id.*

AL-SAFOO also possessed three different documents containing instructions for manufacturing explosives. For example, one of the documents located on AL-SAFOO's white iPhone was titled "The Cylindrical Bomb Course" and contained detailed directions on the construction of a bomb targeted at people and vehicles. According to the manual, the bomb "is good for multiple shapes and types of targets," can be "prepared easily and quickly," is "easily camouflaged" and "is considered to be very effective against personnel and vehicles." GX 11 and 11T at 1. The manual, which includes images of the required components and materials, GX 13 at 1-22, contains instructions to assist the user in selecting shrapnel for "human targets" and "unarmored or lightly shielded vehicles." GX 11T at 3 and 7.

A second document contains instructions for manufacturing acetone peroxide, a highly explosive chemical. GX 14 at 2 and GX 14-16T at 1. A third document found in AL-SAFOO's email account[9] was an issue of Al Anfal magazine, a pro-ISIS publication. The magazine features a section called "By the Pen of the Supporters," referring to supporters of ISIS, and features an article with the Khattab logo "written by Abu Al Abbas Al Iraqi," AL-SAFOO's pseudonym. GX 15 at 11. The same newsletter included an infographic containing images of hand grenades and other

---

[9] The name of the account was jamesfoley870@[email provider]. James Foley was an American journalist murdered by ISIS in 2014.

explosives components which lists instructions on making an explosive device using acetone peroxide. *Id.* at 14; GX 14-16T at 4.

AL-SAFOO's email accounts also included videos of ISIS leader Abu Bakr al Baghdadi's speeches, battle footage, and a video showing young children training to fight for ISIS. Other videos called for attacks on the West. For example, AL-SAFOO possessed a video from Al Hayat, an official media arm of ISIS. GX Video 3; *see also* https://www.justice.gov/eoir/federal-register-notices-2019 (adding Al Hayat to ISIS's FTO designation) (last visited September 24, 2019). The video features an Australian ISIS fighter and is titled "Inside the Khalifah." In the video, the speaker calls for ISIS supporters to "kill the polytheists wherever you find them and capture and besiege them." *Id.* at 2:29. He further advocates for those "unable to make hijra [foreign fighter's journey to fight]" to "inflict terror upon the kuffar [unbelievers]" and "make the lands of the crusaders your battlefield." *Id.* at 3:30-3:45. And in a section of the video titled "Just Terror Tactics" he calls for specific acts of violence by tradesman, truck drivers and others. *Id.* at 3:49-4:15.

Another document on AL-SAFOO's white iPhone describes the parameters of a pro-ISIS online campaign, consistent with Khattab's methodology. The document calls for "[m]essages of incitement to continue fighting and repealing the assault of the infidels," "[i]nciting to listen, obey and denounce disobedience of emirs," and "[s]ending letters of intimidation and threat to the enemies of the Islamic State." GX 12 and 12T. The document includes "Notes" related to "Preparation and setting up . . . as they were in previous campaigns," recommends reposting "speeches of the

emirs of the Islamic State," and setting out a two week duration of the media campaign. *Id.* The document notes that it "should not be posted publicly, and it should be sent only to the individuals concerned with production, in order to interact with its content." *Id.* A nearly identical statement was shared in a Khattab group on social media by Individual 2, another Khattab administrator. GX 20 at 003-000150.

The defendant is also highly security-conscious and used techniques that hid his online activities, which could shield him from the Court's supervision, and would enable him to flee the jurisdiction if released. Many of the operational security techniques he employed are described in the criminal complaint. Complaint, Dkt. No. 1, ¶¶ 113-15. However, review of his white iPhone has confirmed the steps AL-SAFOO took to shield his true identity, including the use of multiple virtual private network ("VPN")[10] applications. GX 3, Rows 1, 2, 21,158, 163, 221, 294, 313, 420 and 436 (VPN applications installed on the white iPhone); *see also* GX 1, Rows 67-72 (VPN usage); GX 2, Rows 130-139 (same).

The device also contained several messaging or email applications that offer end-to-end encryption and other privacy features that protect anonymity, including Proton mail, Mail.ru, Tutanota, Whisper Systems, and Telegram. (*Id.*, Rows 49, 57, 62, 95, 227, 410.) Consistent with Khattab's creation of pro-ISIS infographics, videos and articles and the need to shield Khattab members' identities and locations, AL-SAFOO also had a metadata remover installed on his device, which permits users to

---

[10] VPNs are used to maintain online anonymity. They assign temporary IP addresses to a user, which disguises that user's true IP address when the user connects to websites or other online services.

add, edit or remove metadata such as GPS location, author information, time stamps, and other information from images and documents. *Id.;* GX 1, Row 73-74 (showing metadata remover usage).

AL-SAFOO's sophisticated use of technology to hide his criminal conduct is consistent with his education and professional experience. He was formerly employed in the IT sector, has a master's degree in computer science, and has experience coding, web development, and database management. *See* GX 4 (AL-SAFOO's resume).

In addition to hiding his own identity, AL-SAFOO counseled others to employ similar operational security techniques. In a conversation between Al-SAFOO and an OCE, AL-SAFOO criticized the OCE for sharing his/her physical location during an online discussion. When the OCE wrote "I work irregular shifts in a bakery here in Turkey". SAFOO responded, "Oh, man! Why did you mention the place where you live? Brother, please delete it immediately! May Allah grant you strength." GX 5 at 3. Later in the same conversation, SAFOO suggested that the OCE use a VPN and have it "always on." *Id.* In another conversation with the OCE, AL-SAFOO mentioned using an "encrypted chat" and told the OCE that AL-SAFOO's phone was used "to support" ISIS and was "not in my name." GX 6 at 2-3.

In light of this information, the defendant's argument that he could be released and subject to some form of online monitoring fails. First, the techniques employees by the defendant go well beyond most citizens' technological savviness. And the "solutions" offered by the defendant cannot prevent AL-SAFOO from using his expertise to either flee or to continue to work on behalf of ISIS. In particular, the

17

government has consulted with both U.S. Pretrial Services and U.S. Probation and representatives of both have confirmed that the "online monitoring" described by the defendant, Def. Mot. at 22-24, is not available for any defendants who are released pending trial. Moreover, the notion that AL-SAFOO's father, who works outside the home, has the ability to prevent the defendant from using the internet to help ISIS or to facilitate his flight from prosecution was properly weighed and dismissed by Magistrate Judge Weismann. Def. Ex. A at 18-19, 26-28.

Finally, the defendant poses a risk of flight because he has close ties to Iraq, the country where he was born. AL-SAFOO has stated his intention to return there, writing in March 2018, "I'm going back to Iraq." GX 6 at 6. Likewise, al-SAFOO told his brother that he did not want to stay in the United States and wanted to discuss his return to Iraq with his family. GX 7 at 1.

### D. The Danger Posed by the Defendant's Release is Significant

For all the reasons described above, the nature and seriousness of the danger that would be posed by the defendant's release is significant and no combination of conditions of pretrial release would alleviate that risk. Since at least October 2017, the defendant was a leader of a pro-ISIS group, which was dedicated to proliferating ISIS's message of violence, recruiting members to that cause, and inciting violence. In addition, consistent with the violent acts carried out by ISIS, the defendant possessed instructional information on how to manufacture explosive devices. If the defendant were released, there is every reason to expect he will persist in his efforts to support ISIS or flee prosecution.

### E. The Defendant's Objections to the Protective Order are Irrelevant to His Bond Motion

The defendant argues, in further support of his motion for bond, that his release is necessary because discovery marked as "sensitive" cannot be left with him in jail. Pursuant to the Protective Orders governing the production of general discovery, Dkt. No. 47, and sensitive discovery, Dkt. No. 57, the government has produced a large volume of non-sensitive/general discovery and a smaller volume of sensitive discovery.[11]  Pursuant to the Protective Orders, the defendant is allowed to maintain copies of the non-sensitive discovery with him at the MCC but sensitive discovery can only be reviewed in the presence of counsel.

The defendant argues, essentially, that he cannot afford to pay his counsel to sit with him at the MCC for extended periods of time in order to review the sensitive material. The defendant concludes that, with the current protective order in place, he will be not be able to adequately prepare for trial and that he will be deprived of his right to counsel of choice. Defendant has cited no cases that support this position. This argument should be rejected by the Court for several reasons.

First, discovery is not relevant to the determination of whether the defendant is a danger to the community and/or a risk of flight. Rather, the Court must determine whether there are conditions of release that can assure the appearance of the defendant and the safety of the community. 18 U.S.C. 3142(g). Those factors only

---

[11] The government has also produced classified discovery to counsel. The classified production is irrelevant to the defendant's argument. Even if the Court were to grant the defendant's motion, he would still not be allowed to review the classified discovery.

include the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the defendant, and the nature and the seriousness of the danger. Access to discovery is nowhere mentioned in the Bail Reform Act and should not be considered as a factor.

Second, the government's designation of a particular item as sensitive is largely based on the nature of the material, which includes ISIS propaganda and recruitment materials, including calls for violence and martyrdom; beheading videos and similarly violent material; and information related to manufacturing explosives. Examples of these types of material are discussed above. If the defendant was allowed to possess this material in his cell, there is a risk that the material could be used as tools to recruit other inmates to join or support ISIS.

Third, as requested by defense counsel and where possible, the government has downgraded sensitive material to remove the concerning portions and provided a second redacted set as general discovery. For example, a large amount of the sensitive discovery included screen shots of communications by the defendant and other Khattab members in their online communication platforms. The screen shots were initially produced as sensitive discovery. At the request of defense counsel, the government carefully and diligently went through the thousands of pages of screen shots—both the original Arabic and the translated English—and redacted certain portions in order to produce a general discovery copy on a DVD, which the defendant is able to review on his own at the MCC. In addition, the government produced to defense counsel, as sensitive discovery, a copy of the defendant's white iPhone, which

he used to support ISIS. The government produced an extraction report of the phone which, as the defendant states in his motion, is a PDF that summaries the contents of the phone. Def. Mot. at 21. The defendant states that the extraction report is 24,346 pages but he fails to state that the PDF was produced as general discovery, allowing the defendant to review the document on his own at the MCC. Furthermore, the PDF produced to the defendant and his counsel is text-searchable, making review significantly easier than if the discovery were produced in a non-searchable image format.

The government will continue to work with defense counsel to address their concerns regarding the defendant's ability to review discovery on his own, however, any inconvenience to the defendant or his counsel does not warrant allowing the defendant to be released on bond. If the defendant's legal fees become unbearable, the government has no objection to appointing current counsel as court-appointed counsel.

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that this Court order

that the defendant be detained pending the resolution of this case.

Respectfully Submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:      s/ *Melody Wells*
MELODY WELLS
BARRY JONAS
PETER S. SALIB
Assistant United States Attorneys
219 S. Dearborn
Chicago, IL 60604
(312) 353-5000

Dated: September 24, 2019