UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ASHRAF AL SAFOO,
    a/k/a Abu Al'-Abbas Al-Iraqi,
    a/k/a Abu Shanab,
    a/k/a Abbusi

No.    18 CR 696

Hon. John Robert Blakey

**GOVERNMENT'S MOTION TO TAKE DEPOSITION PURSUANT
TO RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

The United States of America, by and through its attorney, JOHN R. LAUSCH,

JR., United States Attorney for the Northern District of Illinois, hereby respectfully

submits this Motion to Take a Deposition Pursuant to Rule 15 of the Federal Rules

of Criminal Procedure.[1]

Specifically, the government is seeking the testimony of Yasir al Anzi, a

member of ISIS who is currently incarcerated in Iraq after having been convicted of

a terrorism related offense. Al Anzi has been interviewed by the FBI in Iraq and, as

described in greater detail below, has provided material information regarding the

charges brought against the defendant.

## I.  THE PENDING CHARGES

On March 12, 2020, defendant Ashraf al-Safoo was charged by a second

superseding indictment with: conspiracy to provide material support to a foreign

---

[1]    In support of this motion, the government submits the affidavit of FBI Assistant Legal
Attaché Nicole Canales as Exhibit 1.

terrorist organization, in violation of Title 18, United States Code, Section 2339B; conspiracy to transmit threats in interstate commerce, in violation of Title 18, United States Code, Section 371; conspiracy to intentionally access a protected computer without authorization, in violation of Title 18, United States Code, Section 371; multiple counts of intentionally accessing a protected computer without authorization, in violation of Title 18, United States Code, Section 1030; and multiple counts of providing material support to a foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B.

## II. BACKGROUND

The pending charges stem from the defendant's provision of material support to the designated foreign terrorist organization ISIS, through his leadership role in the Khattab Media Foundation ("Khattab"), his efforts to gain unauthorized access to social media accounts and his provision of money to support ISIS.

Khattab was an internet-based organization dedicated to the creation and widespread dissemination of ISIS propaganda, including edited video content, articles and essays, and infographics created through the use of video and photo editing and other similar software. Khattab's infographics, videos and other content often were translated into multiple languages. Some of the videos and infographics created and posted by Khattab were particularly violent and threatening, to include, for example, a video directed towards the United States, called "Our Gifts are Ready" and an infographic of a person depicted as Santa holding his own decapitated head.

Khattab posted its pro-ISIS propaganda across multiple social media platforms including Twitter, Facebook, YouTube, and others. Because the propaganda created and distributed by Khattab included messages that promote violence, Khattab members frequently had their social media accounts suspended or deleted for violating the Terms of Service of those platforms. To circumvent these policies and practices, defendant and other Khattab members sought and gained unauthorized access to social media accounts by exploiting a loophole that allowed Khattab members to re-register email accounts and use those email accounts to access existing social media accounts that they did not own or have permission to access.

Khattab had several administrators and leaders, including the defendant. They and other Khattab members, primarily via communications on a closed and encrypted social media application (Social Media Application A), agreed to work in coordination with ISIS and ISIS' media office to create and disseminate ISIS propaganda consistent with ISIS's declaration promoting the "jihadi media." The defendant's handles in the Khattab rooms were "Abu Al'-Abbas Al-Iraqi," "Abu Shanab" and "Abussi."

In addition to his support of ISIS through Khattab, and as alleged in Count 12 of the Indictment, the defendant sent money to ISIS, typically via Western Union through a currency exchange in Iraq, for the express purpose of providing support to ISIS.

### III.    ARGUMENT

The government respectfully seeks an order from this Court to conduct a deposition of Yasir al Anzi pursuant to Federal Rule of Criminal Procedure 15. That Rule provides that,

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice.

Fed. R. Crim. Pro. 15; *see also United States v. Cannon*, 539 F.3d 601, 603 (7th Cir. 2008). Among those instances that have been held to constitute "exceptional circumstances" are situations where the prospective witness's testimony is material to the case and the witness is unavailable to appear at trial. *United States v. Drogoul*, 1 F. 3d 1546, 1552 (11th Cir. 1993) ("When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony – by deposing the witness – absent significant countervailing factors which would render the taking of the deposition unjust."); *United States v. Korolkov*, 870 F. Supp. 60, 64-65 (S.D.N.Y. 1994). These circumstances must be established by a preponderance of the evidence. *United States v. Mostafa*, 14 F. Supp. 3d 515, 524 (S.D.N.Y. 2014).  Both materiality and unavailability requirements are met here.

The taking of the deposition to preserve the testimony does not violate the Confrontation Clause. *United States v. McGowan*, 590 F. 3d 446, 456 (7th Cir. 2009) ("[T]he videotapes allowed the jury to fully experience [the witness's] testimony, to view her demeanor, to hear her voice and to determine her credibility. We have

already held that there is no Confrontation Clause violation when admitting fully cross-examined testimony preserved by a properly conducted Rule 15 deposition."); *See also United States v. Gigante*, 166 F. 3d 75, 81 (2nd Cir. 1999); *United States v. McKeeve*, 131 F.3d 1, 9 (1st Cir. 1997).

Pursuant to Rule 15(f), the granting of this motion does not guarantee the admissibility of the deposition at trial – the government would still need to establish the witness's unavailability at the time of trial. *Drogoul*, 1 F.3d at 1554-55; *United States v. Cooper*, 947 F. Supp. 2d 108, 114 (D. DC 2013).

Finally, as the proposed deposition would take place outside of the United States, the government requests that the defendant's presence be waived pursuant to Fed. R. Crim. Pro. 15(3). Because the witness is currently incarcerated in Baghdad, Iraq, this motion will also address the logistical issues related to taking the deposition.

## A.    Yasir al Anzi's Testimony Is Material.

On November 25, 2019, Yasir al Anzi was interviewed by FBI Assistant Legal Attaché Nicole Canales along with another agent at the Iraqi Ministry of Interior's General Directorate of Intelligence and Counterterrorism, located in Baghdad.[2] During al Anzi's interview, he told the FBI agents that he joined ISIS in July 2014

---

[2] The interview was recorded and a copy of the recording has been provided to the defendant as general discovery. The questioning was conducted in English through a translator and al Anzi usually responded in Arabic although on occasion he responded in English. If the Court wishes, a copy of the recording can be provided to the Court.

and that he was in charge of ISIS media in the Al Anbar province in Iraq. [3] Al Anzi stated that, as part of his responsibilities, he communicated with "strong [ISIS] supporters" in the United States, to include, primarily, the defendant. Al Anzi told the FBI that supporters are not official ISIS members because they do not have an emir, they are not paid a salary and are not officially in a cell or office but that sometimes supporters are more active than actual ISIS members.

Al Anzi stated that the defendant was active in the Khattab media operation and that Khattb belonged to "the central media [ISIS]." Al Anzi stated that the defendant "devoted his energy for instigation." He also told the agents that he directed the defendant on "all the issues related to the [ISIS] media" and that there were periods of time when he spoke to the defendant on a daily basis.

During that interview, Al Anzi stated that the defendant sent money to him for the purposes of supporting ISIS. Specifically, the defendant sent $400 every two weeks via Western Union through an individual named Zaid who was located in Iraq. [4]

Al Anzi stated that the defendant was aware that the money was for ISIS but he never specifically told the defendant how ISIS utilized the funds (al Anzi claimed the money was used for indigent ISIS fighters). Al Anzi stated that the defendant also

---

[4] The government found, during the execution of a search warrant at the defendant's home, three Western Union receipts each in the amount of $400 and sent to recipients overseas, including one transaction to Zaid, under false names.

sent him $1,500 to help his (al Anzi's) wife who was incarcerated for attempting to illegally enter into Syria from Iraq.

Al Anzi also stated that he and the defendant discussed conducting a terrorist operation in Illinois. He stated that he never directed the defendant to conduct an attack but that, after the October 1, 2017 mass shooting in Las Vegas, they discussed an operation that the defendant was planning. The defendant told al Anzi that he had a target in mind although al Anzi could not recall the exact target. Al Anzi stated that, although he did not direct the defendant to commit an attack, he gave the defendant advice on how to proceed.

Based on the information provided during his interview, al Anzi's testimony is directly material to demonstrating that the defendant, and Khattab, provided material support to ISIS. Count One charges the defendant with conspiring to provide material support to ISIS in the form of services. Counts Five, Seven, Nine, and Eleven charge the defendant with substantive counts of providing services to ISIS. "'Service' similarly refers to concerted activity, not independent advocacy...The use of the word 'to' indicates a connection between the service and the foreign group." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 24 (2010). The Court went on to state that the term "service" covers "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." *Id*. Al Anzi's testimony is material because it confirms that the defendant coordinated his action with an ISIS media emir, who was acting on behalf of ISIS. *See Id*.

Count Twelve charges the defendant with providing material support to ISIS in the form of money. Material support "means any property, tangible or intangible…including currency." See 18 U.S.C. § 2339A(b)(1). Al Anzi's testimony is material to this count because it establishes that the purpose of payments the defendant wired to a money transmitter in Iraq was to support ISIS and that the defendant sent the money at al Anzi's direction.

Thus, al Anzi's testimony is material evidence that a jury could consider in determining the defendant's conduct, intent, and state of mind at the time of the crime.

### B.      Yasir al Anzi is Unavailable to Testify at Trial

"A potential witness is unavailable for purposes of Rule 15(a) when there is a 'substantial likelihood that the proposed deponent will not testify.'" *United States v. Sandoval*, 1997 WL 458424 at *1 (N.D. IL 1997), *citing United States v. Drogoul*, 1 F.3d at 1553.

Al Anzi is an Iraqi citizen located in Iraq. As such, he is beyond the subpoena power of this Court. *United States v. Abu Ali*, 528 F. 3d 210, 239 (4th Cir. 2008). More significantly, he has been convicted by the Iraqi government of a terrorism offense and is currently incarcerated in an Iraqi detention facility. He is facing a sentence that could range from 15 years' incarceration to the death penalty. (Ex. 1 ¶4). As a result of his incarceration, al Anzi is unable to travel to the United States to testify at the defendant's trial. *See United States v. Salim*, 855 F. 2d 944 (2d Cir. 1988) (a witness located in France was unavailable to testify at a trial in the United States because the witness was in custody by French police awaiting her own trial).

8

### C. Logistics

Conducting a deposition in a foreign country can raise logistical issues, to include presence of the defendant, manner and means of taking the deposition, location of the deposition, cooperation of the host country, and the administering of an oath. Taking a deposition in Iraq, because of the security situation in that country, raises the additional challenge of presence of the attorneys.

For reasons explained below, the government proposes that the deposition be conducted via a two-way closed circuit video link with the witness in Iraq and the defendant, his counsel and the government in the Northern District of Illinois.

#### 1. The Defendant's Presence

Fed. R. Crim. Pr. 15(c)(3) states that

> The deposition of a witness who is outside the United States may be taken without the defendant's presence if the court makes case-specific findings of all of the following: . . . (D)(ii) for an in custody defendant, secure transportation and continuing custody cannot be assured at the witness's location.

The al Anzi deposition should take place without the defendant's physical presence in Iraq. This will not violate the Confrontation Clause as long as the defendant has to ability to view the proceeding and confer with his counsel. *McKeeve*, 131 F.3d at 8–9; *United States v. Cooper*, 947 F. Supp. 2d 108, 110 (D.DC 2013). *See also United States v. Medjuck*, 156 F.3d 916 (9th Cir. 1998) (affirming Court's order granting Rule 15 deposition of foreign witnesses without the presence of defendant where the government facilitated defendant's participation by video-conference); *United States v. West*, 2010 WL 3324886 at *4 (N.D. IL 2010). Under the government's

proposal, the defendant will still be able to view the proceeding and confer with counsel.

There is a significant risk that, if the defendant were allowed to travel to Iraq to attend the deposition, he would flee. The Court has already recognized the defendant to be a risk of flight. (R. 119). Allowing him to travel to Iraq only heightens that concern for several reasons. First, as outlined in the Government's Memorandum in Opposition to Defendant's Request for Pre-Trial Release, the defendant expressed, on more than one occasion prior to his arrest, his desire to leave the United States to return to Iraq. (R. 117 at p. 18). Second, the defendant has incentive to flee. If convicted, he is facing a significant jail sentence, possibly decades in prison. Third, the defendant has the means to stay in Iraq. The defendant has been accused of providing material support to a foreign terrorist organization whose base of operations is in Iraq and Syria. While it is recognized that ISIS no longer controls territory in Iraq, it is equally recognized that ISIS still exists and, as such, resources would be available to the defendant that could facilitate his ability to remain in Iraq.[5] *See United States v. West*, 2010 WL 3324886 at *4 (N.D. IL 2010). Finally, it would be difficult for the United States Marshals to maintain custody of the defendant while in Iraq. *See Abu Ali*, 528 F. 3d at 239. Allowing him to travel there, even with a Marshals escort, would provide him with a head start to reach his goal of escaping U.S. justice.

---

[5] *ISIS is Regaining Strength in Iraq and Syria.*

https://www.nytimes.com/2019/08/19/us/politics/isis-iraq-syria.html

For the above reasons, there is good cause to conduct the deposition without the defendant's presence.

### 2.    Presence of the Attorneys

Due to security concerns in Iraq, the government is requesting that defense counsel, and the government, remain in Chicago and question al Anzi via two-way video.

First, the U.S. State Department has instituted a policy of limiting the number of U.S. personnel in Iraq to a set amount at any one time (Ex. 1, ¶ 5). If the government were to send a prosecutor to Iraq, that would require a government employee stationed in Iraq to leave the country, possibly disrupting that individual's duties and responsibilities.

Second, the security situation in Iraq is volatile. The U.S. Embassy and Baghdad International Airport have been subjected to aerial bombing attacks that place the safety of all personnel in jeopardy (Ex. 1, ¶ 6). Moreover, as reported in the media, recent events have resulted in heightened tensions in Iraq, particularly against the United States. As a result, on January 11, 2020, the U.S. State Department issued a new travel warning advising U.S. citizens to not travel to Iraq, citing recent damage to the Embassy compound following terrorist attacks.[6]  As a

---

[6]    The State Department further advised: "Do not travel to Iraq due to terrorism, kidnapping, and armed conflict. U.S. citizens in Iraq are at high risk for violence and kidnapping. Numerous terrorist and insurgent groups are active in Iraq and regularly attack both Iraqi security forces and civilians. Anti-U.S. sectarian militias threaten U.S. citizens and Western companies throughout Iraq. Attacks by improvised explosive devices (IEDs) occur in many areas of the country, including Baghdad."

result of the situation on the ground, the U.S. government cannot guarantee the safety of defense counsel or the prosecutors (Ex. 1, ¶ 6).

The government recognizes the unusual nature of the request. Typically, defense counsel would be physically present during the Rule 15 deposition to personally confront the witness.[7] This request, based on the exceptional grounds set forth above, is warranted and necessary, and not unprecedented. In *United States v. Hayat*, 2017 WL 6539610 at *6 (E.D. CA 2017), the defendant moved to take depositions of witnesses in Pakistan. The government objected due to travel warnings issued by the State Department. *Id.* The Court held "that risks to the safety of all parties who might travel to Pakistan for purposes of a deposition weighs against petitioner's motion for in-person depositions" but that "the safety issues are largely, if not completely, alleviated by petitioner's proposal of testimony depositions by video conference." *Id.*

3.    **Manner and Means of Taking the Deposition**

The government has conferred with Agent Canales regarding the procedure for taking the deposition. As outlined in her affidavit, Agent Canales had conferred with Iraqi government authorities and had received assurances that the Iraqi government will allow al Anzi to participate in the deposition (Ex. 1, ¶ 7).[8] Agent Canales also

---

https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/Iraq.html#/

[7]    If, at the time of taking the deposition, the security situation changes, the parties can revisit the issue of personal attendance by the attorneys.

[8]    Agent Canales' affidavit was sworn out prior to an evacuation of some U.S. personnel from Iraq. She has since returned and will be re-engaging with Iraqi government authorities on this issue.

states that she will arrange for al Anzi to be brought to a secure U.S. government facility that has two way closed circuit television capabilities (*Id.*). At this location, the government will provide a translator who will be audible for all parties to hear (*Id.*).

The government will make arrangements for a facility in the Chicago area that will both have the capability of connecting with the video feed from Iraq and will allow the defendant to be present. The defendant's counsel will be present with him, and there will be opportunities for the two to confer in the same manner as if the testimony were taking place during trial.

Finally, al Anzi will be placed under oath by either an Iraqi government official subjecting him to criminal consequences in Iraq if he were to testify falsely or, if an Iraqi official is unable to administer an oath, by a U.S. State Department Consular Officer subjecting him to criminal consequences in the United States. (Ex. 1, ¶ 7). *See Abu Ali*, 528 F. 3d at 241.

## IV.    CONCLUSION

For the reasons stated above, the government respectfully requests the Court grant the government's motion to take a deposition of Yazir al Anzi pursuant to Federal Rule of Criminal Procedure 15.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:    /s/ *Barry Jonas*
BARRY JONAS
MELODY WELLS
PETER SALIB
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

Dated: March 13, 2020

# EXHIBIT 1

**AFFIDAVIT**

I, Nicole M. Canales, being duly sworn, state as follows:

1.     I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately September 2009.

2.     I am currently an Assistant Legal Attaché (ALAT) assigned to the FBI's Legal Attaché Office in Baghdad, Iraq.  I have been an ALAT in Iraq since October 13, 2019. My responsibilities as an ALAT include assisting FBI personnel in the United States with their investigations to include conducting interviews of individuals located in Iraq. In order to fulfil my responsibilities, I often interact with Iraqi government and law enforcement officials.

3.     On November 25, 2019, I interviewed Yasir al Anzi at the Iraqi Ministry of Interior General Directorate of Intelligence and Counterterrorism (GDIC). The interview was recorded and I have provided a copy of the recording to the FBI Chicago Field Office.

4.     Prior to the interview, I was informed by Iraqi Brigadier General Adil Hussein al Kharzraji that al Anzi has been convicted of a violation of Article 4 of the Iraqi criminal code, specifically terrorism, and that he is awaiting sentencing. I have also been informed that al Anzi is facing a minimum sentence of 15 years and can be sentenced to the death penalty. Based on my experiences in Iraq, I am aware that the Iraqi government would not allow al Anzi to be furloughed from their custody to travel to the United States to appear as a witness at a trial.

5. It is my understanding that the prosecutors and agents assigned to the case of *United States v. Ashraf al Safoo*, are seeking to conduct, along with counsel for Safoo, a deposition of al Anzi. I am aware that the U.S. State Department has issued a directive that has limited the number of U.S. personnel allowed in Iraq at any one time. If the prosecutors or agents were to enter Iraq, then an equal number of current personnel would have to exit the country. These requirements could disrupt the mission of those personnel.

6. In addition, the U.S. Embassy have been the subject of frequent indirect fire (IDF) and recent protests which have caused significant material damage to the embassy's controlled access center's entry points and impacted the Embassy security situation. As a result of the IDF, recent protests, and overall instability in the region, the U.S. government cannot guarantee the safety or security of the prosecutors, agents or defense counsel. Furthermore, on January 11, 2020 the Department of State revised the travel advisory to Iraq to "Do Not Travel," due to terrorism, kidnapping, and armed conflict.

7.     I have spoken with Iraqi government officials and have been assured that the Iraqi government will allow al Anzi to testify for a deposition. There are U.S. government facilities that al Anzi can be transported to, that has the capability for a two-way closed circuit video feed. I can also arrange for an Arab linguist to provide translation services during the deposition. Finally, I will attempt to arrange for an Iraqi official to administer an oath to al Anzi. If I am unable to arrange for an Iraqi official, I will arrange for a U.S. government official to administer the oath.

Nicole M. Canales
Special Agent
Federal Bureau of Investigation

Subscribed and sworn
before me this 5 day of January, 2020

Vincent E Clark
Exp: 12/02/2021